FILED

JUL 2 2 2003

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LORI BOGACZ,                                   )
                                               )
                     Plaintiff,                )     Case No.  03C 4548
                                               )
          v.                                   )     Judge John W. Darrah          DOCKETED
                                               )
BOARD OF EDUCATION, CALUMET                    )     Magistrate Judge Denlow        JUL 2 3 2003
PUBLIC SCHOOL DISTRICT 132,                    )
                                               )
                     Defendant.                )

## NOTICE OF FILING

TO:     Felicia L. Frazier, Esq., Odelson & Sterk Ltd., 3318 W. 95th Street, Evergreen
        Park, Illinois 60805

        **PLEASE TAKE NOTICE** that on July 22, 2003, we filed with the United States District
Court Northern District of Illinois Eastern Division, **PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS and REPLY IN SUPPORT OF MOTION FOR
TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTIVE RELIEF**, a copy
of which is attached hereto and hereby served upon you.

                                   **Respectfully submitted,**

                          By:   _____
                                   One of the Attorneys for Plaintiff

Michael F. Braun #6180471
Dolores Ayala #6236649
SCHUYLER, ROCHE & ZWIRNER, P.C.
130 East Randolph Street, Suite 3800
Chicago, Illinois  60601
(312) 565-2400

## CERTIFICATE OF SERVICE

        Kathy Kujawa, a non-attorney, certifies that she caused a complete copy of the above Notice and
attached Response to Motion to Dismiss and Reply in Support of Motion for Temporary Restraining Order
and/or Preliminary Injunctive Relief, to be served on the address indicated above by depositing a copy of
same in the U.S. Mail at 130 East Randolph Street, Chicago, Illinois, before 5:00 p.m. on July 22, 2003
with proper postage prepaid.

"OFFICIAL SEAL"
CHERYL G. GRACZYK
Notary Public, State of Illinois
My Commission Expires July 31, 2006

SUBSCRIBED AND SWORN TO
before me this 22d day of July, 2003

_____
        Notary Public

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**

JUL 2 3 2003

LORI BOGACZ,                          )
                                      )
                    Plaintiff,        )       Case No. 03C 4548
                                      )
        v.                            )       Judge John W. Darrah
                                      )                              **FILED**
BOARD OF EDUCATION, CALUMET           )       Magistrate Judge Denlow
PUBLIC SCHOOL DISTRICT 132,           )
                                      )       JUL 2 2 2003
                    Defendant.        )

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

Plaintiff, Lori Bogacz ("Bogacz"), by her attorneys, Michael F. Braun and Dolores Ayala of Schuyler Roche & Zwirner, P.C., submits this Response to Defendant's Motion to Dismiss her Complaint for Injunctive and Other Relief (the "Complaint").

### I.    INTRODUCTION

In her Complaint, Bogacz seeks a preliminary and permanent injunction enjoining Defendant, Board of Education, Calumet Public School District 132 ("the Board"), from removing Bogacz from her position as Principal of Burr Oak Academy, a primary school within the Calumet Public School District 132 ("the District"), and an Order enjoining the Board from offering to any other person the position of Principal of Burr Oak Academy to which Bogacz has a legally enforceable right. Bogacz filed a Motion for Temporary Restraining Order (the "Request for TRO"), requesting the entry of an Order maintaining the *status quo* between the parties until such time as this Court could conduct a preliminary injunction hearing on the merits of the Complaint.

On July 3, 2003, counsel informed the Court that the Board had agreed not to offer to any other person the position of Principal of Burr Oak Academy until such time as the Court

7

ruled on the Board's Motion to Dismiss the Complaint. The Court then entered and continued the Request for TRO, pending its ruling on the Board's anticipated Motion to Dismiss.

The Board has moved to dismiss the Complaint pursuant to Fed.R.Civ.Pro. 12(b)(1). Sections I, II, IV and V of the Board's supporting Memorandum address the Motion to Dismiss. Section III of the Board's Memorandum is a Response to the Request For TRO.  For the Court's convenience, Bogacz submits both this Response to the Motion to Dismiss, and a separate Reply in support of the Request for TRO.

## II.   ARGUMENT

### A.   Overview

The Board seeks dismissal of the Complaint pursuant to Fed.R.Civ.P. 12(b)(1), arguing that the Court lacks jurisdiction over Bogacz's claim because it is, "at best, a breach of contract claim" and does not present a federal question.  Notwithstanding this statement, the thrust of the Board's argument appears to be that the Principal's Contract executed by Bogacz and the Board on March 28, 2003 (the "Contract") was not valid, since it was the product of a Board resolution which failed when called for a vote. The Board maintains that without a valid contract, there can be no legitimate claim of entitlement to continued employment, and without such a claim, there can be no procedural due process violation.  Thus, the Board's Motion to Dismiss is premised upon a single argument – that the vote taken on Action Item 03-03-01 at the March 20, 2003 regular meeting of the Board to approve the Contract did not pass, and that as a result, the Contract is not valid.

For the reasons that follow, the Board is mistaken and the Motion to Dismiss should be denied. The Contract is, without question, valid and binding on the parties. As such, it affords Bogacz a protectible property right in her position as Principal of Burr Oak Academy.  By its anticipatory breach of the Contract, the Board has deprived Bogacz of that property right without due process of law.  This Court has jurisdiction over Bogacz's due process claim

-2-

pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1983.  It has pendent jurisdiction over her state law breach of contract claim.  These arguments are fully discussed below.

### B.  Legal Standard on Motion to Dismiss

Bogacz construes the Board's Rule 12(b)(1) Motion to Dismiss as an argument that Bogacz fails to state a federal claim.  Since the basis for the Board's argument is that the Contract is invalid, the Court should apply the same standard in ruling on the Board's 12(b)(1) motion as it would on a 12(b)(6) motion, for, "if a defendant's Rule 12(b)(1) motion is an indirect attack on the merits of the plaintiff's claim, the court may treat the motion as if it were a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted." *Peckmann v. Thompson,* 966 F.2d 295, 297 (7th Cir. 1992).

Accordingly, in ruling on the Motion to Dismiss, the Court must assume the truth of the facts alleged in the Complaint and draw all reasonable inferences in favor of Bogacz.  *Sanville v. McCaughtry,* 266 F.3d 724, 732 (7th Cir. 2001).  The Court may dismiss the Complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with Bogacz's allegations.  *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).  Under Fed.R.Civ.P. 10(c), the Court considers the Complaint as well as the Contract attached as an exhibit to the Complaint in deciding whether, on its face, the Complaint states a valid claim for a due process violation.  *See, Wright v. Associated Ins. Cos., Inc.,* 29 F.3d 1244, 1248 (7th Cir. 1994).

### C.  Exhibit A To The Board's Motion to Dismiss, Along With The Argument Based on Exhibit A, Introduces Matter Extraneous to the Complaint And Should Be Stricken

A motion to dismiss being considered under a Rule 12(b)(6) analysis (the analysis which the court applies in considering a 12(b)(1) motion that attacks the merits of the plaintiff's claim) attacks the legal sufficiency of the complaint and any exhibits attached to the complaint.  It does

not go beyond the four corners of the complaint, but merely directs its attack to the sufficiency of the pleadings. An attempt to bring in matters extraneous to the complaint is improper.

Here, the Board has gone beyond the four corners of the Complaint by attaching the minutes of the March 20, 2003 regular meeting of the Board to support an argument that the vote taken at that meeting did not result in a valid resolution. The resolution's alleged failure, so argues the Board, means that the Contract was not valid.

### D.    The Contract is Valid and Legally Binding Upon the Parties

In the alternative and without waiving her position with respect to Defendant's Exhibit A and the argument it is used to support, the Board's theory, concocted *after* the composition of the Board changed on April 1, 2003, that the Contract was the product of a Board resolution that failed when called for a vote on March 20, 2003, is hopelessly flawed. Basically, the new Board (more precisely, certain members of the new Board) wishes to nullify the Contract by challenging the legal efficacy of actions taken by members of the earlier Board on March 20 and March 28, 2003. The Board cannot do so.

It should be noted, as a preliminary matter, that the law presumes public officials to have performed their duties properly, and that one who contends to the contrary has a difficult burden of proof. *Compton v. School Directors of District No. 14*, 8 Ill.App.2d 243, 131 N.E.2d 544 (2d Dist. 1955). Thus, the law presumes that the earlier Board acted lawfully when it voted to extend the Contract to Bogacz on March 20, 2003, and when it entered into that Contract with Bogacz on March 28, 2003. The Board's scant, one-paragraph discussion of its position fails to rebut this presumption.

Review of the minutes of the March 20, 2003 regular meeting shows that during that meeting, the Board properly met in executive session to discuss, among other things, personnel matters, including the approval of administrative contracts for the 2003-2005 school years. The Board then reconvened into regular session and called Action Item 03-03-01 for a vote. Action

-4-

Item 03-03-01 related to, among other things, Bogacz's contract to serve as Principal of Burr Oak Academy from August 4, 2003 through June 30, 2005, at an annual salary of $66,950.00. A quorum was present. Of the four Board members present, two voted "yea" and two abstained.

The Board contends that Action Item 03-03-01 thus failed, and that the Contract executed by the Board President and Bogacz on March 28, 2003 was therefore not valid. However, the applicable law compels a contrary conclusion – namely, that Action Item 03-03-01 passed and that the Contract is valid and binding.

Section 10-12 of the Illinois School Code (105 ILCS 5/10-12) provides as follows:

§ 10-12. Quorum. A majority of the full membership of the board of education shall constitute a quorum. Unless otherwise provided, when a vote is taken upon any measure before the board, a quorum being present, a majority of the votes of the members voting on the measure shall determine the outcome thereof.

There is no specific provision of the School Code providing otherwise as to a vote on the question of whether to approve administrative contracts. The Board consists of seven members. Four were present on March 20, 2003 when Action Item 03-03-01 was called for a vote. This constituted a quorum. Two members voted "yea". This was a majority of the members voting, as it is well established that an abstention is not considered a vote, but rather, a failure to vote. *Prosser v. Village of Fox Lake,* 91 Ill.2d 389, 393, 438 N.E.2d 134, 135 (Ill. 1982). Since a "majority of the members voting" voted "yea", Action Item 03-03-01 passed. *Bunsen v. County Board of School Trustees of Lake County,* 48 Ill.App.2d 291, 198 N.E.2d 735 (2d Dist. 1964).

*Bunsen* is directly on point, as it construes the requirements needed for passage of a resolution pursuant to Section 10-12 of the School Code under circumstances nearly identical to those present here. The question in *Bunsen* was whether a school board's resolution authorizing annexation of one school district to another was valid where, out of a seven member board, three members voted "yea", two voted "nay", one voted "pass" and one did not vote. Those challenging the resolution argued (as the Board does here) that the resolution did

-5-

not pass because it had not received the approval of a full majority of the board. Relying on the plain language of Section 10-12 of the School Code (the same language as that at issue here), the *Bunsen* Court held that, since there was no specific provision of the School Code providing otherwise on the question of annexation, a "yea" vote of a majority of all members of the board was not required. Rather, since a quorum was obviously present, and "since the majority who voted voted in favor of annexation," the resolution carried. *Id.*, at 737.

The *Bunsen* Court based its decision, in part, upon the observation that there are other provisions of the School Code that *do* require the majority vote of all members of the board for passage. "The legislature apparently felt in [those other] matters that a majority of the members of the board was required. No such provision is found as to the vote on the question of annexation..." *Id.* Here, as with the question of annexation, there is no provision in the School Code requiring a majority of the members of the Board on a vote for approval of administrative contracts. Accordingly, under *Bunsen,* Action Item 03-03-01 passed and the Contract is valid.

The Board offers no credible argument to support its contention that Action Item 03-03-01 failed. First, the Board states, that "if the affirmative vote of a majority is required, then nothing less than a majority of 'yea' or 'nay' votes will result in passage." (Def. Brief, p. 3) Yet the Board ignores the critical point (discussed above) that Section 10-12 requires only a majority of the members voting, not a majority of the full board. *Bunsen, supra.*

Next, the Board cites a single case, *Lake County Forest Preserve v. Northern Trust Bank/Lake Forest,* 207 Ill.App.3d 290, 565 N.E.2d 715 (2d Dist. 1990), in an attempt to bolster its argument. However, the Board's reliance on *Lake County Forest Preserve* is misplaced, as *Lake County Forest Preserve* actually supports Bogacz's position.

The question in *Lake County Forest Preserve* dealt with the same question presented here – namely, the effect of an abstention on the outcome of a vote. The *Lake County Forest*

*Preserve* Court followed the Illinois Supreme Court's holding in *Prosser, supra,* which held that, based upon the statutory provision at issue there, the abstention operated as a concurrence with the three members of the majority who had approved the resolution in question there. *Prosser,* at 136. For, "it is a general rule that those members present at a meeting consisting of a quorum must vote against a proposal in order to defeat it. If members are present and refuse to vote, they are deemed to have consented to the majority decision." *Prosser,* at 135, *citing* Rhyne, The Law of Local Government Operations sec. 5.6, at 77 (1980). This holding developed from the common law rule pertaining to elections that "[W]henever electors are present, and do not vote at all (as they have done here), they virtually acquiesce in the election made by those who do." *Id.*

Applying the rule in *Prosser,* the *Lake County Forest Preserve* Court held that, by failing to vote, a member of the Lake County Board of Commissioners concurred with 12 of 24 members of the Board voting for a resolution, thereby resulting in a valid resolution. The court stated that under the *Prosser* rule, if that member did not want the resolution to pass, he would have had to vote "nay." By not voting, he concurred with the majority who voted "yea." *Lake County Forest Preserve,* at 718. Thus, under *Lake County Forest Preserve,* if either of the two members of the Board who abstained from voting on Action Item 03-03-01 on March 20, 2003 did not want the measure to pass, they would have had to vote "nay." By not voting, they concurred with the majority who voted "yea", resulting in a valid resolution.

It is clear that under *Bunsen, Prosser* and *Lake County Forest Preserve,* the two abstentions at the March 20, 2003 Board meeting operated as concurrences with the majority of those who voted. As the majority who voted voted "yea," Action Item 03-03-01 passed, and the Contract between Bogacz and the Board is valid and binding.

The Board concedes there are "cases" where an abstention is deemed an acquiescence or concurrence with the majority. (Def. Brief, p. 3) However, the Board says nothing further with respect to those "cases" (other than to cite, inexplicably, *Lake County Forest Preserve*). In

addition, the Board cites Section 10-7 of the School Code which requires that when voting on matters involving the expenditure of money, the "yeas" and "nays" shall be taken and entered on the records of the proceedings of the Board. This very same point was addressed by the *Prosser* Court as part of its analysis leading to the conclusion that an abstention is considered a failure to vote. The relevant statute in *Prosser* similarly stated, "the yeas and nays shall be taken upon the question ... and recorded in the journal of the city council." *Prosser*, at 393. From this the *Prosser* Court concluded that, since the statute provided for the taking of only two types of votes – "yeas" and "nays" – an attempt to vote other than "yea" or "nay", *ie.*, to abstain, is not deemed to be a vote. *Id.* Thus, the Board's citation to Section 10-7 of the School Code actually supports Bogacz's position.

As discussed, the Board carries a heavy burden to rebut the presumption that the earlier Board acted lawfully when it approved the Contract on March 20, 2003 and when its lawful representative executed that Contract on behalf of the Board on March 28, 2003. As the cases discussed above demonstrate, the Board falls decidedly short of meeting that burden. The Contract is legal and binding upon the Board.

### E.   The Complaint States A Valid Claim For a Procedural Due Process Violation

To state a *prima facie* claim for a procedural due process violation based upon the deprivation of a property interest, Bogacz must allege facts sufficient to show: (1) that the Contract provides her a protectible property interest in her position as Principal of Burr Oak Academy; and (2) that in depriving Bogacz of that property interest, the Board did so without constitutionally sufficient protections. *Colon v. Schneider*, 899 F.2d 660, 666 (7th Cir. 1990). It is clear from the face of the Complaint that Bogacz states a valid claim for a due process violation.

1.    **The Contract Affords Bogacz A Protectible Property Right In Her Position As Principal of Burr Oak Academy**

Property interests are created and their dimensions are defined by existing rules or understandings that stem from an independent source, such as state law. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 538, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). Under applicable Illinois law, a person has a property interest in his or her job where he or she has a legitimate expectation of continued employment based on a legitimate claim of entitlement. *Draghi v. County of Cook*, 184 F.3d 689, 692 (7th Cir. 1999). A plaintiff shows a legitimate expectation of continued employment by pointing to a specific ordinance, state law, contract or understanding limiting the ability of the state or state entity to discharge him. *Id.*

Bogacz alleges facts sufficient to show that she has a valid contract to serve as Principal of Burr Oak Academy. The Contract is attached to her Complaint. As discussed above, the Contract was lawfully approved and executed by the parties. Thus, Bogacz shows a legitimate expectation of continued employment, based upon a legitimate claim of entitlement. She therefore has adequately alleged a property interest in her job as Principal of Burr Oak Academy.

As fully discussed at pp. 6-7 of Bogacz's Memorandum of Law in Support of Motion For Temporary Restraining Order (the "Memorandum"), it is well established that a public employee whose term of employment is set by contract has a protectible property interest in performing that contract in accordance with its terms. *See, Head v. Chicago School Reform Board of Trustees* 225 F.3d 794 (7th Cir. 2000); *Bordelon v. Chicago School Reform Board of Trustees* 233 F.3d 524 (7th Cir. 2000); *Vail v. Board of Education of Paris Union School District No. 95* 706 F.2d 1435 (7th Cir. 1983), *aff'd*, 466 U.S. 377, 104 S.Ct. 2144 (1984); *Hostrop v. Board of Junior College District No. 515* 471 F.2d 488 (7th Cir. 1972), *cert denied*, 411 U.S. 967, 93 S.Ct. 2150 (1973); and *Newton v. Chicago School Reform Board of Trustees*, 2000 WL 1367612 (N.D. Ill.

2000).

As discussed in the Memorandum, these cases demonstrate that Bogacz has a constitutionally-protected property interest in her position as Principal of Burr Oak Academy. The Contract provides that Bogacz shall perform the duties of the Office of Principal for the period August 4, 2003 through June 30, 2005. The Contract further provides that it may be terminated by: (a) the mutual agreement of the parties; (b) Bogacz's retirement; (c) Bogacz's resignation; or (d) revocation of Bogacz's certificate.   Other than these conditions for terminating the Contract, Bogacz is not subject to discharge except for cause. These written terms of the Contract, taken together with the understanding of the parties that Bogacz would remain Principal of Burr Oak Academy (as Bogacz alleges in the Complaint), establish a protectible property interest in Bogacz's position as Principal of Burr Oak Academy.

> **2.     Bogacz's Allegations Concerning Her Removal and "Reassignment" to A Position of Lower Rank Are Sufficient to Demonstrate A Termination of Her Employment As Principal Of Burr Oak Academy And, As Such, Deprivation Of Her Protectible Property Right to That Position**

The Board contends that Bogacz is unable to establish a procedural due process violation since she was "reclassified from Principal to Assistant Principal without a reduction in salary" and since she "continues to be employed with District 132." (Def. Brief, p. 8). The Board's argument is flawed for several reasons.

First, the Board's statement that the reclassification was without a reduction in salary is in error. The position of Assistant Principal to which Bogacz has been reassigned is at an annual salary of $65,000.00. The Contract is for $66,950.00. Further, the Contract is for a two-year term.   The "reassignment" is only for one year.   Therefore, at a minimum, the "reassignment" deprives Bogacz of her full salary for the 2003-2004 school term, and of all employment for the 2004-2005 school term.

Of greater significance, however, is the fact that the Board's actions do result in termination of Bogacz's employment as Principal of Burr Oak Academy. Bogacz did not contract to perform whatever administrative duties the Board might wish to assign her to. She contracted to perform the duties of the Office of Principal. By removing Bogacz from her position as Principal and "reassigning" her to a job with responsibilities not commensurate with those performed in her capacity as Principal, the Board has, in effect, *terminated* Bogacz's employment as Principal of Burr Oak Academy, and, indeed, as a Principal in and for the District. *See, Head v. Chicago School Reform Board of Trustees*, 225 F.3d 794, 805 (7th Cir. 2000) ("As the contract between Head and the Board specifically makes Head principal of Pope Elementary, there can be no doubt that the Board terminated the contract by removing Head from that position."); *see also, Wozniak v. Conry*, 236 F.3d 888 (7th Cir. 2001) (finding that stripping a university professor of teaching responsibilities and reassigning him to manage the engineering faculty's web site, even with no change to his title and salary, deprived him of his professional stature, which was a form of property interest. "For an employer that strips an employee of the ordinary incidents of the job, in a way that could lead a reasonable, self-respecting person to resign, has constructively discharged that person even if the employee's title and salary are unaffected. Thus, a police department that strips a ranking officer of duties and assigns him to shuffle papers in a broom closet has deprived that officer of property." *Id.*, at 890, *citing Parrett v. Connersville*, 737 F.2d 690 (7th Cir. 1984); *Bordelon v. Chicago School Reform Board of Trustees*, 8 F.Supp.2d 779 (N.D.Ill. 1998) (entering a preliminary injunction under Section 1983 and reinstating principal to his former position after finding that principal's "reassignment" amounted to a termination of his employment as principal, resulting in deprivation of a property right without due process of law).

Put another way, to "reassign" Bogacz from her position of Principal of Burr Oak Academy is to *remove* her from that position. And to remove her from that position is to *dismiss*

her. *See, Bordelon, supra; see also, Parrett, supra* (holding that by removing a Chief of detectives from his position and transferring him to the uniformed force as line captain, even without a reduction in pay, amounted to constructive discharge, and thus, a deprivation of property); *Caviness v. Board of Education of Ludlow Community Consol. School Dist. No. 142 of Champaign County*, 375 N.E.2d 157 (4th Dist. 1978) (holding that the words 'removed' or 'dismissed' as used in the School Code are not limited to instances of complete termination, but rather encompass any reduction in the extent of employment); *see also Hansen v. Board of Education of School Dist. No. 65*, 502N.E.2d 467 (2d Dist. 1986) (where teacher was "reassigned" to non-teaching duties, Court held that the total deprivation of teaching responsibilities was the equivalent of a dismissal under the School Code, entitling plaintiff to notice of charges and a hearing before a disinterested hearing officer).

Like the principals in *Head, Bordelon* and *Newton, supra*, "reassignment" to a position other than the one she contracted for results in a termination of Bogacz's employment as Principal of Burr Oak Academy, and as Principal in and for the District. Therefore, it is clear that Bogacz alleges facts sufficient to show she has a property right protected by the Due Process Clause, and that in removing her, she was deprived of that right.

### 3.   Bogacz Alleges Facts Demonstrating She Was Deprived of A Property Right Without Due Process of Law

Bogacz alleges that she was not given notice of the Board's intent to remove her as Principal, was not given any reasons or charges upon which the Board's purported actions were based, and was not afforded a hearing where she could be fully informed of the reasons for the Board's actions and to challenge their sufficiency. (Complaint, ¶¶ 12-14)   These facts are sufficient to show that Bogacz's removal was effected without due process of law. *See, Hostrop v. Board of Junior College District No. 515*, 471 F.2d 488 (7th Cir. 1972); *see also, Head, supra*.

WHEREFORE, Plaintiff, Lori Bogacz, respectfully requests that this Court deny the Motion to Dismiss brought by Defendant, Board of Education, Calumet Public School District 132, and set an immediate hearing on her Motion For Temporary Restraining Order and/or Preliminary Injunctive Relief.

Respectfully submitted,

**LORI BOGACZ**

By: _____
One of her attorneys

Michael F. Braun #6180471
Dolores Ayala #6236649
SCHUYLER, ROCHE & ZWIRNER, P.C.
One Prudential Plaza
130 East Randolph Street, Suite 3800
Chicago, IL 60601
(312) 565-2400
372799v1